**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:25-cv-23249-CMA


MULTIPHONE LATIN AMERICA INC.,
a Florida corporation,

      Plaintiff,

vs.

MILLICOM INTERNATIONAL CELLULAR S.A.,
a corporation organized under the laws of Luxembourg,

      Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Multiphone Latin America Inc. ("Multiphone") respectfully submits this Response in Opposition to Defendant Millicom International Cellular S.A.'s ("Millicom") Motion to Dismiss [DE 17]. Millicom's motion fundamentally mischaracterizes both the factual allegations and applicable law, seeking to escape accountability for what the Complaint describes as "a deliberate strategy to: (a) obtain Multiphone's confidential information and business intelligence; (b) prevent Multiphone from achieving market success; (c) develop competing services using Multiphone's proprietary information; and (d) ultimately replace Multiphone's services with Millicom's own competing offerings." (Compl. ¶29). For the reasons set forth below, the Motion should be denied in its entirety.

WHITE & TWOMBLY, P.A.
1

## I. INTRODUCTION

Millicom's Motion represents a calculated attempt to avoid responsibility for its systematic breach of the Master Software Service Agreement ("Agreement") and its bad faith scheme to exploit Multiphone's proprietary technology while deliberately undermining the partnership it contractually promised to support. The Agreement, executed on April 10, 2017, was not merely a contract—it was, as the Complaint alleges, the foundation of a "business partnership to develop a mobile application ('App') for international telecommunications services." (Compl.   7).

Defendant's Motion argues this case comes "eight years after the plaintiff alleges it first saw a breach" (Mot. at 2), but this characterization ignores the Complaint's explicit allegation that Millicom's breaches are ongoing: "beginning in August 2017 and continuing through the present, Millicom has systematically failed to perform its material obligations under the Agreement." (Compl. ¶20) (emphasis added). Moreover, Defendant conveniently ignores the Complaint's detailed allegations of fraudulent concealment, including that "Millicom's development and deployment of competing services was conducted in secret, without disclosure to Multiphone, and in direct violation of the partnership arrangement established by the Agreement." (Compl.   28).

Defendant's Motion to Dismiss is based upon factual issues improper for a Motion to Dismiss. In short, without the benefit of discovery this Court does not have the information needed to make a determination in Defendant's favor. As such, Defendant's Motion must be denied.

## II. STATEMENT OF FACTS

The Complaint paints a detailed picture of calculated deception and systematic breach. During negotiations spanning from April 2016 to early 2017, "Millicom made specific representations to Multiphone regarding its commitment to the venture, including promises to provide extensive marketing support, technical infrastructure, and operational assistance through its telecommunications networks in Latin America." (Compl. ¶8). Based on these representations, Multiphone "invested substantial resources developing the App according to the specifications detailed in Annex A of the Agreement." (Compl. 16).

### A. Millicom's Specific Contractual Obligations

The Agreement imposed detailed, specific obligations on Millicom, as set forth in Section 4.1:

"(a): Marketing support 'that may be necessary to promote the App to the Subscribers and prospective Subscribers'"

"(b): 'The limited right to use the Customer Marks in the App as set forth in this Agreement'"

"(c): 'The local operational support through Customer's Operators'"

"(d): 'The access numbers in the countries where the Operators function'"

"(e): 'Provide the direct interconnection, including but not limited to VPNs, APIS, to the countries where the Operators function'"

(Compl. 12).

### B. Millicom's Pattern of Material Breaches

The Complaint details not isolated incidents but a comprehensive pattern of breach:

1. **Complete Failure of Marketing Support**: Millicom "(a) refused to promote the App through its Tigo-branded telecommunications networks in Bolivia, Colombia, El Salvador, Guatemala, Honduras, and Paraguay; (b) failed to include App promotion in its customer communications; (c) refused to provide marketing materials or joint promotional campaigns; and (d) declined to feature the App on its official websites or mobile platforms." (Compl. ¶ 21).

2. **Abandonment of Operational Support**: Millicom "(a) refused to assign dedicated support personnel; (b) failed to provide technical assistance for local implementation; (c) refused to coordinate with local Tigo operations for service integration; and (d) failed to provide market-specific guidance for service optimization." (Compl. ¶ 22).

3. **Denial of Technical Infrastructure**: Millicom "(a) refused to provide access numbers in countries where operators function; (b) failed to establish direct interconnection services; (c) refused to provide VPN access to its networks; and (d) failed to provide API access for service integration." (Compl. ¶ 23).

## C. The Secret Development of Competing Services

Most egregiously, while accepting the benefits of Multiphone's performance, Millicom was secretly developing competing services: "Upon information and belief, Millicom used confidential information, proprietary algorithms, market intelligence, and business strategies disclosed by Multiphone during their partnership to develop these competing services." (Compl. ¶ 26). This conduct was deliberately concealed, as "Millicom's development and deployment of competing services was conducted in secret, without disclosure to Multiphone." (Compl. ¶ 28).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While Defendant correctly cites the standard from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), it selectively applies it. The Supreme Court emphasized that "a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations" but must provide "more than labels and conclusions." Here, Multiphone has provided detailed factual allegations spanning 36 paragraphs of background facts, supported by the Agreement itself (Exhibit A), far exceeding the "short and plain statement" required by Rule 8.

The heightened standard in *Twombly* and *Iqbal* arose from specific contexts—antitrust conspiracy and civil rights claims respectively—and courts have cautioned against over-applying these standards to ordinary contract and business tort claims. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (rejecting heightened pleading standards outside specific contexts).

Moreover, at this stage, "all well-pleaded factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Discovery is the proper mechanism for fleshing out factual details that Defendant claims are missing from the pleadings.

### IV. ARGUMENT

**A. Plaintiff's Claims Are Timely Filed Under Multiple Applicable Doctrines**

Defendant's statute of limitations argument–the centerpiece of its Motion–fails for multiple independent reasons. Most fundamentally, Defendant's limitations defense requires factual determinations that cannot be resolved on a motion to dismiss.

**1. Statute of Limitations Determinations Require Factual Analysis Inappropriate for Motion to Dismiss**

    **a. Defendant's statute of limitations defense is fundamentally flawed because it requires factual determinations that cannot be resolved on a motion to dismiss.**

Statutes of limitations are considered substantive law for purposes of the Erie doctrine. This principle was established in *Guaranty Trust Co. v. York*, where the U.S. Supreme Court held that federal courts must apply state statutes of limitations in diversity cases to ensure uniformity and avoid inequitable administration of the laws. See *Labaty v. UWT, Inc*., 121 F.Supp.3d 721 (2015). Additionally, rules integrally related to statutes of limitations, such as tolling and equitable estoppel, are also treated as substantive law under Erie. *Id.*, See also *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum, LLC*, 653 F.Supp.2d 895 (2009).

Federal courts sitting in diversity jurisdiction are bound to apply the substantive law of the state in which they sit, including the state's statute of limitations. In *Bitsui v. Doubletree by Hilton Hotel El Paso Downtown*, the court rejected the plaintiff's argument that federal law should apply, affirming that state statutes of limitations are substantive under Erie. See *Bitsui v. Doubletree by Hilton Hotel El Paso Downtown*, Not Reported in Fed. Supp. (2023). Likewise, in *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp*., the court held that federal courts must apply state statutes of limitations and state tolling rules when addressing state law claims. See *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Financial Corp*., 878 F.Supp.2d 1009 (2011).

In Florida, statute of limitations questions are generally matters of fact that must be resolved by the trier of fact when the facts are in dispute. *Cohen v. Cooper*, 20 So. 3d 453 (Fla. 4th DCA 2009)("The determination of timeliness under the statute of limitations is fact-specific and within the province of the jury, not the trial judge.")

**b. The continuing violations doctrine, discovery rule, and fraudulent concealment doctrine all involve factual determinations that cannot be resolved on the face of the pleadings:**

Defendant's Motion to Dismiss highlights factual issues that cannot be resolved by a Motion to Dismiss. The issues are the following:

1. When ongoing breaches actually occurred and continue to occur

2. When Multiphone knew or should have known of the concealed wrongdoing

3. Whether Millicom's concealment was reasonably calculated to prevent discovery

4. The nature and extent of the ongoing contractual obligations

5. Whether the statute of limitations was tolled.

Courts have consistently held that when crucial facts regarding dates or times are in dispute, resolution of the statute of limitations issue by summary judgment or dismissal is disfavored. See *Caliente Partnership v. Johnston*, 604 So.2d 886 (Fla. 2d DCA 1992). Similarly, if there is a factual dispute as to when the last element of a claim accrued and the statute of limitations began to run, summary judgment is improper. See *Hicks v. Keebler*, 312 So.3d 1001 (Fla. 2d DCA 2021). These rulings underscore the importance of resolving factual disputes before determining whether the statute of limitations bars a claim.

Therefore, until this Court is presented with evidence as to when the ongoing breaches actually occurred, whether they continue to occur, when Plaintiff knew or should have known of the concealed wrongdoing, whether Defendant's concealment was reasonably calculated to

prevent discovery, the nature and extent of the ongoing contractual obligations, and whether the statute of limitations was tolled, Defendant's Motion is fatally premature.

### 2. The Continuing Violations Doctrine Renders All Claims Timely

Defendant argues that because "plaintiff complains that Millicom breached its obligations under the contract just months after the contract was signed, eight years ago" (Mot. at 3), the claims are time-barred. This argument fundamentally misreads the Complaint and misapplies Florida law.

The Complaint explicitly alleges: "beginning in August 2017 and continuing through the present, Millicom has systematically failed to perform its material obligations under the Agreement." (Compl. ¶20) (emphasis added). This is not, as Defendant suggests, a claim about breaches that ended "more than five years ago" (Mot. at 3). Rather, these are continuing breaches of ongoing obligations.

Under Florida law, "where a contract imposes a continuing duty and is breached repeatedly, the plaintiff may recover damages accruing within the statutory period preceding the filing of suit." *Peat, Marwick, Mitchell & Co. v. Lane*, 565 So. 2d 1323, 1325 (Fla. 1990). The continuing violations doctrine applies where "the defendant's contractual obligations are of a continuing nature." *Koal Indus. Corp. v. ASLAND, S.A.*, 808 F. Supp. 1143, 1163 (S.D.N.Y. 1992) (applying Florida law); see also *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 144 (4th Cir. 1979) (applying continuing violation doctrine to ongoing contractual breaches).

In the present case, the Agreement imposed continuing obligations that Millicom breached daily:

1. **Marketing Support**: Section 4.1(a) requires ongoing marketing "that may be necessary to promote the App to the Subscribers and prospective Subscribers" (Compl. ¶12)--not a

one-time obligation but continuous support throughout the Agreement's term. Each day Millicom fails to provide this required marketing support constitutes a separate, actionable breach.

2. **Operational Support**: Section 4.1(c) mandates continuing "local operational support through Customer's Operators" (Compl. 12)---an obligation renewed daily. Each day without dedicated support personnel or technical assistance constitutes a new breach.

3. **Technical Infrastructure**: Sections 4.1(d) and (e) require ongoing provision of "access numbers" and "direct interconnection, including but not limited to VPNs, APIS" (Compl. 12)---continuous services, not one-time deliverables. Each day Millicom fails to provide VPN access or API connectivity constitutes a separate breach of these ongoing technical obligations.

Each day Millicom fails to provide these services constitutes a new breach, making all claims timely. See *Allapattah Services, Inc. v. Exxon Corp.*, 188 F.R.D. 667, 675 (S.D. Fla. 1999) (holding that "for contracts requiring serial performance by the parties, the statute of limitations does not begin to accrue upon the initial breach").

a. **Defendant's "May 2020 Resolution" Argument Fails**

Defendant's claim that breaches were "resolved" when Multiphone achieved its month 12 revenue projections in May 2020 fundamentally misunderstands the nature of the ongoing breaches alleged. (Mot. at 3). Achieving revenue projections through alternative means does not cure Millicom's ongoing failures to provide the required marketing support, operational assistance, and technical infrastructure. These are independent obligations that continue to be breached daily, regardless of whether Multiphone has found workarounds for some of the resulting damages.

### 3. The Discovery Rule Tolls the Limitations Period for Concealed Wrongdoing

Defendant cannot benefit from its own concealment. The Complaint alleges that "Millicom's development and deployment of competing services was conducted in secret, without disclosure to Multiphone, and in direct violation of the partnership arrangement." (Compl. ¶28). Further, "Millicom's conduct demonstrates a deliberate strategy" designed to "ultimately replace Multiphone's services with Millicom's own competing offerings." (Compl. 29).

Under Florida Statutes § 95.031(2)(a), the statute of limitations for tort actions begins to run on the date the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence. The Complaint alleges Millicom "began developing its own competing mobile application and services designed to directly compete with and undermine the App developed by Multiphone" (Compl. ¶25), but this was done "in secret" (Compl.   28).

### a.   Why Due Diligence Would Not Have Revealed the Concealment Earlier

The nature of Millicom's concealment made discovery through due diligence virtually impossible. Millicom was developing competing services internally while simultaneously maintaining the facade of a business partnership. As the Complaint alleges, Millicom continued to receive benefits from Multiphone's performance while secretly competing, making the deception particularly insidious. Multiphone had no reason to suspect that its business partner was secretly developing competing technology using Multiphone's own confidential information until the competing services were actually deployed in the market.

As the court in *State Farm Mutual Automobile Insurance Company v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1159 (S.D. Fla. 2015), explained, "the delayed discovery doctrine

provides that a cause of action does not accrue until the plaintiff knows or reasonably should know of the tortious act giving rise to the cause of action." Again, when Plaintiff knew or should have known is a factual dispute that is improper for a Motion to Dismiss.

### 4. Fraudulent Concealment Estops Millicom from Asserting Limitations

The Florida Supreme Court has held that "a defendant may be estopped from claiming the statute of limitations defense when the defendant's fraudulent conduct causes the plaintiff to relax his vigilance or deviate from the right of inquiry." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 (Fla. 2001).

Here, the Complaint alleges exactly such fraudulent conduct: Millicom's "development and deployment of competing services was conducted in secret" (Compl. ¶28) while it continued to receive benefits from Multiphone's performance. This concealment prevented Multiphone from discovering the full extent of Millicom's breaches and bad faith conduct. Millicom's maintenance of the business partnership relationship while secretly competing was precisely the type of conduct that fraudulently concealed the true nature of its breaches.

### 5. Equitable Tolling Based on the Ongoing Business Relationship

The continuing business relationship between the parties also supports equitable tolling of any limitations periods. Courts have recognized that parties in ongoing business relationships may reasonably delay bringing suit while attempting to resolve disputes informally. See *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) (recognizing equitable tolling in ongoing business relationships).

### 6. Defendant's Laches and Equitable Estoppel Arguments Are Premature and Meritless

Defendant's invocation of laches (Mot. at 4-5) requires proving four elements, including that Defendant "lacked knowledge that the plaintiff will assert the right upon which suit is

based." *Delgado v. Delgado*, 320 So. 3d 919, 925 (Fla. 3d DCA 2021). But Millicom cannot claim it lacked knowledge of its own breaches. The Complaint alleges Millicom knew exactly what it was doing: executing "a deliberate strategy" to exploit Multiphone while developing competing services. (Compl. ¶29). Additionally, Plaintiff cannot be held to have slept on its rights when Defendant took extraordinary measures in concealing its actions.

Similarly, equitable estoppel requires "a representation as to a material fact that is contrary to a later-asserted position." *United Auto. Ins. Co. v. Chiropractic Clinics of S. Florida*, 322 So. 3d 740, 743 (Fla. 3d DCA 2021). Defendant identifies no such representation by Multiphone. Continuing to perform under a contract while suffering breaches does not create estoppel against the non-breaching party. If anything, Millicom's conduct in maintaining the appearance of a partnership while secretly competing is what should trigger estoppel principles against Millicom.

    **a.**     **Like statute of limitations determinations, laches and equitable estoppel involve intensely factual inquiries that cannot be resolved without discovery into the parties' conduct, knowledge, and communications throughout their business relationship.**

"The facts evidencing unreasonableness of delay, lack of excuse, and material prejudice to the defendant for purposes of a laches analysis are seldom set forth in the complaint, and at the motion to dismiss for failure to state a claim stage of the proceedings cannot be decided against the complainant based solely on presumptions. Fed. R. Civ. P. 12(b)(6)." *Am. Addiction Centers, Inc. v. Nat'l Ass'n of Addiction Treatment Providers*, 515 F. Supp. 3d 820 (M.D. Tenn. 2021).

    **b.**     **The Independent Tort Doctrine Does Not Bar Plaintiff's Distinct Claims**

Defendant's sweeping assertion that "plaintiff's alleged claims, whether articulated in the complaint as a tort or a contract claim, are based on the same facts" (Mot. at 6) ignores crucial distinctions in both the conduct alleged and the legal duties violated.

### 1. Each Tort Claim Arises from Independent Legal Duties

Florida law is clear: tort claims may proceed alongside contract claims where they are based on independent legal duties. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996). The Florida Supreme Court has explicitly held that "parties to a contract are not relieved from tort liability to each other in all circumstances." *Moransais v. Heathman*, 744 So. 2d 973, 980 (Fla. 1999); see also *Metropolitan Dade County v. Dyer*, 315 So. 2d 442, 444 (Fla. 3d DCA 1975) (allowing tort claims based on duties independent of contract).

### Distinguishing Each Tort Claim from the Contract Claim:

1. **Breach of Implied Covenant (Count II)** targets the duty of good faith and fair dealing implied in every contract, focusing on Millicom's bad faith conduct in undermining the contract's purpose while accepting its benefits.

2. **FDUTPA (Count III)** is based on statutory duties prohibiting deceptive trade practices, existing independently of any contractual relationship and focusing on misrepresentations during negotiations.

3. **Unfair Competition (Count IV)** protects against misappropriation of business information and unfair competitive practices that exist separate from contractual obligations.

4. **Intentional Interference (Count V)** protects third-party business relationships that exist outside the contract between Multiphone and Millicom.

5. **Trade Secrets (Count VI)** is based on statutory protection under Florida Statutes § 688.001 et seq., creating duties that exist regardless of any contractual relationship.

The Eleventh Circuit has consistently recognized that statutory tort claims, in particular, can proceed alongside contract claims. See *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan*

*Companies, Inc.*, 714 F.3d 1253 (11th Cir. 2013)("Florida's economic loss doctrine did not preclude condominium association's claims against its insurance broker for negligence and breach of fiduciary duty, alleging that broker, with whom association had a contractual relationship, caused part of association's economic losses from costs of remediating hurricane damage by failing to procure an adequate windstorm insurance policy; ***Florida's economic loss doctrine applied only in products liability suits***.")(emphasis added).

**2. The Breach of Implied Covenant Claim (Count II) Targets Bad Faith Conduct Beyond Mere Non-Performance**

Defendant argues Count II is duplicative because it "says virtually the same thing" as the breach of contract claim. (Mot. at 7). This mischaracterizes the allegations. Count II specifically targets Millicom's bad faith conduct in:

1. "systematically withholding performance of material obligations **while continuing to receive benefits from Multiphone's performance**" (Compl. ¶47(a)) (emphasis added)

2. "secretly developing competing services **using confidential information obtained through the partnership**" (Compl.   47(b)) (emphasis added)

3. "acting to undermine Multiphone's business success **while bound by contractual obligations to support the joint venture**" (Compl.   47(c)) (emphasis added)

This is not mere non-performance but "bad faith with the specific intent to prevent Multiphone from achieving the commercial success contemplated by the Agreement." (Compl. 48). As the court in *QBE Ins. Corp. v. Dome Constr. Corp.*, 10 So. 3d 676, 678 (Fla. 4th DCA 2009), recognized, the implied covenant prohibits conduct designed to defeat the purpose of the contract, even if not expressly prohibited.

**3.   The   FDUTPA   Claim   (Count   III)   Addresses   Deceptive   Trade   Practices Independent of Contract**

Defendant's assertion that the FDUTPA claim is "merely a regurgitation of its breach of contract claim" (Mot. at 12) ignores the specific deceptive and unfair practices alleged:

1.      "making false representations regarding its intent to support the joint venture" (Compl.   53(a))

2.      "concealing its development of competing services while bound by contractual obligations" (Compl.   53(b))

3.      "utilizing unfair methods of competition by using confidential information to develop competing services" (Compl.   53(c))

4.      "engaging in conduct likely to mislead consumers and create unfair competitive advantages" (Compl.   53(d))

These allegations describe "material misrepresentations during contract negotiations and performance about its commitment to the partnership while secretly planning to compete against Multiphone" (Compl.¶54)---classic deceptive trade practices that would violate FDUTPA regardless of any contract. Courts have consistently held that contract-related deceptive practices can form the basis for FDUTPA claims. See *PNR, Inc. v. Beacon Property Management, Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (allowing FDUTPA claims based on contract-related deceptive conduct); *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984) (recognizing FDUTPA claims arising from deceptive business practices regardless of contractual relationship).

**4. The Trade Secrets Claim (Count VI) Is Based on Statutory Duties Independent of Contract**

Defendant's argument that the trade secrets claim fails under the independent tort doctrine ignores that the Florida Uniform Trade Secrets Act creates statutory duties that exist

independently of any contract. The Complaint alleges Millicom misappropriated specific categories of trade secrets:

1.      "proprietary software algorithms and technical specifications for mobile application development"

2.      "customer behavioral analysis methodologies and market intelligence techniques"

3.      "business strategies and operational approaches specifically developed for Latin American telecommunications markets"

4.      "pricing optimization models and revenue calculation methods"

5.      "technical architecture specifications and system integration processes"

6.      "marketing strategies and customer acquisition methods"

(Compl.   73).

These trade secrets were protected not just by contract but by Florida Statutes § 688.001 et seq., which creates independent statutory liability for misappropriation. See *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003) (recognizing that trade secret claims exist independently of contractual relationships).

### 5. The Remaining Claims Target Distinct Wrongful Conduct

1.  **Unfair Competition (Count IV)**: Targets "misappropriating confidential business information obtained through the contractual relationship" and "using Multiphone's proprietary algorithms, business strategies, and market intelligence to develop competing services" (Compl. ¶60)---conduct that would be actionable regardless of any contract. See *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (allowing unfair competition claims based on misappropriation of business information).

2. **Intentional Interference (Count V)**: Addresses interference with "existing and prospective advantageous business relationships with current and potential customers" (Compl. ¶66)---third-party relationships outside the contract between the parties. See *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385 (Fla. 4th DCA 1999) (recognizing interference claims based on harm to third-party relationships).

3. **Unjust Enrichment (Count VII)**: Properly pled in the alternative under Fed. R. Civ. P. 8(d)(3), addressing Millicom's retention of benefits "while simultaneously failing to provide the contracted consideration and support" (Compl. ¶83).

**C. Each Claim Is Properly Pled and Satisfies All Pleading Requirements**

**1. The Breach of Contract Claim (Count I) Clearly Identifies the Breached Provisions**

Defendant argues it is "unclear what provision or obligation under the contract has been violated" (Mot. at 8). This is demonstrably false. The Complaint specifically identifies breaches of:

1. Section 4.1(a): "failing to provide marketing support required under Section 4.1(a)" (Compl. 40(a))

2. Section 4.1(c): "failing to provide operational support required under Section 4.1(c)" (Compl. 40(b))

3. Sections 4.1(d) and (e): "failing to provide technical infrastructure required under Sections 4.1(d) and 4.1(e)" (Compl. 40(c))

The Complaint then provides detailed factual allegations about how each provision was breached (Compl. ¶¶ 21-23). Defendant's complaint that Multiphone hasn't detailed "when and how" each breach occurred (Mot. at 8) seeks to impose a heightened pleading standard not

required for breach of contract claims. Rule 8(a) requires only a "short and plain statement," not the detailed factual pleading Defendant demands.

The case Defendant cites, *Brush v. Miami Beach Healthcare Group Ltd.*, 238 F. Supp. 3d 1359 (S.D. Fla. 2017), involved a complaint that failed to identify any specific contractual provisions that were allegedly breached. Here, by contrast, Multiphone has specifically identified the breached contract provisions and provided factual allegations supporting each claimed breach.

### 2. The Implied Covenant Claim (Count II) Is Properly Tied to Express Contract Terms

Contrary to Defendant's assertion (Mot. at 10), the implied covenant claim is directly tied to the Agreement's express terms. The Complaint alleges Millicom breached the covenant by "systematically withholding performance of material obligations" (Compl. ¶47(a))---the very obligations detailed in Section 4.1 of the Agreement. The claim targets not just non-performance but the bad faith manner of that non-performance: secretly competing while accepting benefits.

Florida courts have consistently held that implied covenant claims may be based on the breach of express terms when accompanied by bad faith conduct. See *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 792 (Fla. 2d DCA 2005).

### 3. The FDUTPA Claim (Count III) Satisfies Both Rule 8 and Rule 9(b)

While Defendant argues the FDUTPA claim fails under Rule 9(b)'s heightened standard (Mot. at 10), the Complaint provides the required specificity:

1.   **Who**: Millicom, through its authorized representatives (Compl.   7)

2.   **What**: False representations about supporting the venture while secretly developing competing services (Compl. ¶¶ 53-54)

3.     **When**: During contract negotiations in 2016-2017 and throughout performance (Compl. ¶¶ 7-8, 54)

4.     **Where**: In Florida, where negotiations occurred and the Agreement was partially performed (Compl.    3)

5.     **How**: Through concealment and misuse of confidential information (Compl. ¶¶ 26-28, 55)

Moreover, courts have recognized that FDUTPA claims based on deceptive trade practices need not meet the full Rule 9(b) standard when they do not sound in fraud. See *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006); *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 575 (1977) (distinguishing between fraud claims and unfair trade practice claims).

### 4. The Remaining Claims Meet All Pleading Requirements

1.   **Unfair Competition**: The Complaint alleges specific acts of "misappropriating confidential business information" and "using Multiphone's proprietary algorithms, business strategies, and market intelligence to develop competing services" (Compl. 60). Defendant's assertion that "customer confusion" is required (Mot. at 13) misstates Florida law for unfair competition based on misappropriation. See *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1133 (M.D. Fla. 2007) (recognizing unfair competition claims based on misappropriation without requiring customer confusion); *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (same).

2.   **Intentional Interference**: The Complaint identifies "existing and prospective advantageous business relationships with current and potential customers for its App

services in the Latin American telecommunications markets" (Compl.    66). At the pleading stage, this identification is sufficient under Rule 8(a). Greater specificity would require discovery into Millicom's disruption of specific customer relationships. See *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994) (noting that specific business relationships may be identified through discovery when the defendant's conduct generally interfered with business prospects).

3. **Trade Secrets**: The Complaint provides "reasonable particularity" by identifying six specific categories of trade secrets (Compl. ¶73) and alleging how they were misappropriated (Compl. ¶76). Defendant's demand for greater detail (Mot. at 15) would require public disclosure of the very secrets Multiphone seeks to protect. Courts have consistently recognized that trade secret claims must balance the need for specificity with the need to protect the confidential information. See *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 726 (7th Cir. 2003) (allowing general descriptions of trade secrets at pleading stage to protect confidentiality).

4. **Unjust Enrichment**: This claim is properly pled in the alternative to breach of contract, as expressly permitted by Fed. R. Civ. P. 8(d)(3). Florida law allows alternative pleading where the validity or scope of the contract may be disputed. This principle is codified in Florida Rule of Civil Procedure 1.110(g), which explicitly allows parties to plead alternative claims or defenses, even if they are inconsistent. Courts have consistently upheld this rule, emphasizing its purpose to provide flexibility in litigation and ensure that claims or defenses can be adjudicated based on facts developed during discovery and trial. The case law confirms the application of Rule 1.110(g) to alternative pleading. In *Thomas v. Trench Training Systems, LLC*, the court reiterated that the Florida Rules of

Civil Procedure explicitly allow plaintiffs to state causes of action in the alternative, citing Rule 1.110(g) and prior case law. Thomas v. Trench Training Systems, LLC, 377 So.3d 198 (Fla. 2d 2023).

**D. Injunctive Relief Is Appropriately Sought**

Defendant's argument that injunctive relief "is not a cause of action" (Mot. at 16) reflects a misunderstanding of Florida pleading practice, which traditionally includes prayers for injunctive relief as separate counts. See *Fla. R. Civ. P. 1.110(b)*(permitting separate counts for different types of relief).

Regardless of form, the Complaint adequately alleges irreparable harm:

● "Continued misuse and misappropriation of Multiphone's trade secrets and confidential information" (Compl.   87(A))

● "Loss of competitive advantage derived from proprietary technology and business intelligence" (Compl.   88(A))

● "Damage to business reputation and market position that cannot be adequately compensated by monetary damages" (Compl.   88(D))

These allegations of ongoing harm to confidential information and competitive position establish the inadequacy of legal remedies. **Monetary damages are particularly inadequate for ongoing trade secret misappropriation and competitive harm because such injuries are inherently difficult to quantify and often cause continuing, non-compensable harm to business relationships and competitive position.** See *Telex Corp. v. IBM Corp.*, 367 F. Supp. 258, 346 (N.D. Okla. 1973) (recognizing inadequacy of monetary damages for trade secret misappropriation), aff'd in part, rev'd in part, 510 F.2d 894 (10th Cir. 1975).

### E. Discovery Is Needed to Fully Develop the Factual Record

Many of Defendant's challenges to the factual sufficiency of the pleadings are premature at the motion to dismiss stage. The Federal Rules envision that discovery will flesh out the factual details necessary to prove claims. See *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957) (noting that discovery allows development of factual record); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (emphasizing that discovery, not pleadings, is the proper mechanism for developing facts).

Particularly with respect to claims involving trade secret misappropriation and deceptive conduct, the full extent of Defendant's wrongdoing can only be uncovered through discovery of Defendant's internal documents, communications, and business practices. Dismissing these claims at the pleading stage would improperly deny Plaintiff the opportunity to develop the factual record necessary to prove its claims.

### F. Leave to Amend Should Be Granted if Any Deficiency Is Found

Should the Court identify any pleading deficiency, Multiphone respectfully requests leave to amend. The Eleventh Circuit has consistently held that "a district court should grant a plaintiff at least one opportunity to amend their complaint." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). This is particularly appropriate where, as here, no prior amendment has been made and discovery would clarify any perceived ambiguities. See *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (requiring opportunity to amend before dismissal with prejudice).

### V. CONCLUSION

Millicom's Motion seeks dismissal through technical arguments that distort both the Complaint's allegations and applicable law. The Complaint alleges far more than a simple breach

of contract---it details a calculated scheme to exploit a business partner's technology and market intelligence while deliberately undermining the partnership through systematic breaches and secret competition.

The Complaint alleges ongoing breaches of continuing obligations, making all claims timely. It states independent causes of action based on distinct legal duties and different wrongful conduct. Each claim is properly pled with sufficient factual detail to satisfy applicable pleading standards under the liberal notice pleading standard of Rule 8(a).

These are serious allegations of ongoing commercial misconduct that warrant full discovery and adjudication on the merits, not dismissal on the pleadings. The importance of allowing discovery to proceed cannot be overstated, as many of the factual details Defendant claims are missing can only be uncovered through examination of Defendant's internal documents and business practices. Millicom will have ample opportunity to contest these allegations after discovery, but at this stage, accepting the Complaint's allegations as true, Multiphone has clearly stated plausible claims for relief.

**WHEREFORE**, Multiphone respectfully requests that this Court:

A. Deny Defendant's Motion to Dismiss in its entirety;

B. In the alternative, grant Multiphone leave to amend to address any deficiencies identified by the Court;

C. Award Multiphone its reasonable attorneys' fees and costs incurred in responding to this Motion pursuant to the Agreement's Section 20.2;

D. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**WHITE & TWOMBLY, P.A.**
*Counsel for Plaintiff*

WHITE & TWOMBLY, P.A.

9999 NE 2nd Avenue, Ste. 306
Miami Shores, FL 33138
Tel: (786) 502-2038
By: /s/ David Alvarez
David Alvarez, Esq.
FBN: 1054426
david@whitetwombly.com
robert@whitetwombly.com
paralegalryt@whitetwombly.com
katherine@whitetwombly.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 8, 2025, a true and correct copy of the foregoing

was served via CM/ECF on all counsel of record, including:

Jorge A. Mestre, Esq.
Robert Kuntz, Esq.
Allison Henry, Esq.
RIVERO MESTRE LLP
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134

By: */s/ David Alvarez*
David Alvarez, Esquire
FBN: 1054426