UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-23249-CIV-ALTONAGA/Reid

MULTIPHONE LATIN
AMERICA INC.,

       Plaintiff,

v.

MILLICOM INTERNATIONAL
CELLULAR S.A.,

       Defendant.

_____/

## <u>ORDER</u>

**THIS CAUSE** came before the Court on Defendant, Millicom International Cellular S.A.'s Motion to Dismiss [ECF No. 17]. Plaintiff, Multiphone Latin America Inc. filed a Response [ECF No. 18]; to which Defendant filed a Reply [ECF No. 19]. Plaintiff also filed a Motion for Leave to File [a] Sur-Reply [ECF No. 22] and a Proposed Sur-Reply [ECF No. 22-1]. The Court has considered the record, the parties' written submissions, and applicable law. For the following reasons, the Motion to Dismiss is granted in part, and the Motion for Leave to File is denied.

## I. BACKGROUND

This case, removed from state court on the basis of diversity jurisdiction, centers on a contract dispute between Plaintiff, a Florida-based software-development company; and Defendant, a Luxembourg-based public limited liability company that provides international telecommunication services. (*See* Am. Notice of Removal [ECF No. 7] ¶¶ 3–5; *see also generally id.*, Ex. 2, Compl. [ECF No. 7-2]).

Plaintiff alleges that in April 2016, Defendant initiated discussions about a joint venture to develop a mobile application for international telecommunications services. (*See* Compl. ¶ 7).

Defendant promised to contribute marketing support, technical infrastructure, and operational assistance. (*See id.* ¶ 8). After a year of negotiations, the parties executed an agreement under which Plaintiff would develop, host, and maintain a mobile application enabling Defendant's subscribers in the United States, Canada, and Spain to place international calls and purchase prepaid airtime services through Defendant's network in six Latin American countries. (*See id.* ¶¶ 9–10; *see also id.* 80–108).[1]

According to Plaintiff, the agreement required Defendant to perform a range of services — including marketing; license procurement; and local operational support in Bolivia, Colombia, El Salvador, Guatemala, Honduras, and Paraguay — and permitted Plaintiff to use Defendant's trademarks and copyrighted materials within the application. (*See id.* ¶¶ 12–13; *see also id.* 83). Confidentiality obligations also required both parties to keep confidential all "Confidential Information" as defined in the agreement. (*See id.* ¶ 14; *see also id.* 89). A copy of the agreement appended to the Complaint provides for a two-year initial term beginning August 1, 2016, and a one-year renewal term that automatically applied unless a party opted out. (*See id.* 80, 94).

Plaintiff invested substantial resources developing the application, which it launched on August 1, 2017. (*See id.* ¶¶ 16–17). Since then, Plaintiff performed its obligations under the agreement, including providing customer support and maintaining security programs. (*See id.* ¶¶ 18–19). Yet Defendant allegedly breached the agreement "beginning in August 2017 and continuing through the present" by withholding promised marketing and operational support — including network access — and preventing Plaintiff from using its branded materials within the application. (*See id.* ¶¶ 20–24). Plaintiff further alleges — "[u]pon information and belief" —

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

that Defendant used confidential information to build and launch competing applications in Latin American markets. (*Id.* ¶¶ 25–29 (alteration added)).

As a result of Defendant's breaches, Plaintiff has allegedly sustained at least $11 million in damages. (*See id.* ¶ 35). Plaintiff bases that sum on projections estimating $4.2 million in first-year revenue from the joint venture, which Plaintiff did not achieve until May 2020 — almost three years behind schedule. (*See id.* ¶¶ 33–34).

Plaintiff brings seven claims for relief: breach of contract (Count I) (*see id.* ¶¶ 37–43); breach of the implied covenant of good faith and fair dealing (Count II) (*see id.* ¶¶ 44–50); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 (Count III) (*see* Compl. ¶¶ 51–58); three tort claims — unfair competition, intentional interference with business relationships, and misappropriation of trade secrets (Counts IV–VI, respectively) (*see id.* ¶¶ 59–80); and unjust enrichment (Count VII) (*see id.* ¶¶ 81–86).[2]

Defendant moves to dismiss the Complaint in its entirety, arguing the claims are barred by statutes of limitation and the equitable doctrines of laches and estoppel; Florida's independent tort doctrine bars Counts II, IV–V, and VII; and Plaintiff fails to allege facts sufficient to sustain any claim. (*See generally* Mot.). Plaintiff opposes dismissal, maintaining that the Complaint's factual allegations do not support dismissal for untimeliness, all claims are sufficiently alleged, and the independent tort doctrine does not apply. (*See generally* Resp.).

## II. LEGAL STANDARDS

***Rule 12(b)(6).*** "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added;

---

[2] Plaintiff labels its request for injunctive relief as Count VIII. (*See* Compl. ¶¶ 87–93; *see also* Resp. 21 (acknowledging the injunctive-relief request is not a separate cause of action)).

quoting *Twombly*, 550 U.S. at 570).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Twombly*, 550 U.S. at 555 (alteration added; citation omitted).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).  When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

***Rule 9.***  Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Id.* (alteration added).  To comply with Rule 9(b), a complaint must set forth "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4)

what the defendant obtained as a consequence of the fraud." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citations omitted). Failure to meet that standard warrants dismissal. *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

## III. DISCUSSION

The Court begins by addressing Defendant's argument that Plaintiff's claims are time-barred and then turns to the sufficiency of the allegations. Finally, the Court addresses troubling deficiencies in Plaintiff's filings.

### A. **Timeliness**

Defendant contends that statutes of limitation bar each claim, and Plaintiff's delay in pursuing its claims warrants dismissal on equitable grounds. (*See* Mot. 3–6; Reply 2–3). Plaintiff maintains the claims are timely because Defendant's breaches have been ongoing, Plaintiff only recently discovered Defendant's alleged competitive actions, and equitable tolling applies. (*See* Resp. 5–12). Defendant's arguments fail to persuade.

***Statutes of Limitation.*** "Dismissal under Federal Rule of Civil Procedure 12(b)(6) on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (citation, footnote call number, and quotation marks omitted), *abrogated on other grounds by Merck & Co. v. Reynolds*, 559 U.S. 633 (2010). Furthermore, "[p]laintiffs do not bear the burden of negating the affirmative defense of the statute of limitations in their complaint." *Bamert v. Pulte Home Corp.*, No. 08-cv-2120, 2012 WL 3292875, at *3 (M.D. Fla. Aug. 10, 2012) (alteration added; citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 846 (11th Cir. 2004)).

"In Florida, the statute of limitations runs from the time the cause of action accrues." *Raffay v. Longwood House Condo. Ass'n, Inc.*, 389 So. 3d 589, 592 (Fla. 3d DCA 2023) (citing

Fla. Stat. § 95.031).[3]  A breach-of-contract claim generally accrues at the time of breach, *see id.* (citation omitted); and a tort claim generally accrues "when the injury occurs and the damage is sustained[,]" *Sellers v. Miami-Dade Cnty. Sch. Bd.*, 788 So. 2d 1086, 1087 (Fla. 3d DCA 2001) (alteration added; quotation marks and citation omitted).  The limitations periods for Plaintiff's claims range from five years for breach of contract (Count I), *see* Fla. Stat. § 95.11(2)(b); to four years for breach of the implied covenant of good faith and fair dealing, violation of the FDUTPA, unfair competition, intentional interference with business relationships, and unjust enrichment (Counts II–V, VII), *see id.* §§ 95.11(3)(e), (o); *GlobalTranz Enters., LLC v. GlobalTransservice Corp.*, No. 20-62519-Civ, 2021 WL 1151417, at *3 (S.D. Fla. Mar. 26, 2021) (citations omitted); to three years for misappropriation of trade secrets (Count VI), *see* Fla. Stat. § 688.007.

To begin, the Court readily finds that Counts II–VI are not barred by statutes of limitations. Plaintiff's allegations do not establish that these claims accrued over three or four years before the filing of the Complaint.  (*See generally* Compl.).  Certainly, Defendant makes no argument that the Complaint shows such timing — other than a conclusory statement that the "claims are . . . time barred."  (Mot. 4 (alterations added; citations omitted); *see also generally id.*; Reply).

As to the breach-of-contract claim, Defendant points to two of Plaintiff's allegations as evidence the limitations periods have expired: that breaches of the agreement began in August 2017 (*see* Compl. ¶ 20); and Plaintiff reached the one-year projected revenue target of $4.2 million in May 2020 (*see id.* ¶ 34).  According to Defendant, these allegations show that Plaintiff's contract claim accrued almost eight years before the filing of the Complaint, and any "breach that caused [P]laintiff damages" was resolved over five years ago.  (Mot. 3 (alteration added)).  Plaintiff insists

---

[3] The parties agree that Florida common and statutory law applies to the dispute.  (*See generally* Mot.; Resp.).

the claim is timely because the Complaint includes allegations of "continuing breaches of ongoing obligations." (Resp. 8–9).

As the parties recognize, the continuing violations doctrine provides that when breaches of a contract are ongoing, the statute of limitations generally does not begin to run until the termination of the contract. (*See* Resp. 9; Reply 3 (citing *Allapattah Servs., Inc. v. Exxon Corp.*, 188 F.R.D. 667, 680 (S.D. Fla. 1999))); *see also Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1095 (Fla. 3d DCA 2014) ("[W]here an obligation is continuing in nature, a party's 'ongoing nonperformance constitutes a continuing breach while the contract remains in effect.'" (alteration added; other alterations adopted; quoting *City of Quincy v. Womack,* 60 So. 3d 1076, 1078 (Fla. 1st DCA 2011))).

Despite Plaintiff's allegation of continuing breaches, Defendant contends the breach-of-contract claim accrued no later than August 1, 2018 — the end of the initial term of the agreement. (*See* Reply 3). Defendant relies on *Allapattah*, which cautions that the continuing violations doctrine only applies when a contract is "continuous[.]" 188 F.R.D. at 680 (alteration added); (*see* Reply 3). According to Defendant, the parties' agreement is "severable in nature," not continuous, because renewals that occurred after the two-year initial term formed *new* contracts with distinct performance obligations. (Reply 3 (citing 188 F.R.D. at 680)).

Not so. First, *Allapattah* did not apply Florida law in its continuing-violations analysis, *see* 188 F.R.D. at 679–80, and it is not clear that Florida courts follow its distinction between severable and continuous contracts; Defendant cites no case law on that point (*see generally* Mot.; Reply). *But cf. Access Ins. Planners, Inc. v. Gee*, 175 So. 3d 921, 924 (Fla. 4th DCA 2015) (holding that a contract was divisible, and the statute of limitations began running upon the breach of each separate part, when the contract provided for the payment of commissions "at different

times in the future, upon . . . the occurrence of separate, distinct events" (alteration added)).  In any event, Defendant does not establish that the agreement resembles the "severable" contracts in *Allapattah*, which involved sales agreements that were renewable through "subsequent, successive contracts" every three years.  188 F.R.D. at 680; (*see* Compl. ¶ 94).  In fact, the parties appear to agree that the original contract remains in effect.  (*See* Compl. ¶ 20; Reply 3 ("*The [a]greement . . . renewed every year*[.]" (alterations and emphasis added; citation omitted))).[4]

Because Plaintiff alleges continuing breaches, it is not apparent from the face of the Complaint that the breach-of-contract claim is time-barred.  (*See generally* Compl.).  Dismissal on statute-of-limitations grounds is certainly not warranted.

***Laches and Equitable Estoppel.***   A court may dismiss a claim based on the affirmative defense of laches when a defendant shows that (1) a plaintiff knew of the conduct that gave rise to a claim and had an opportunity to sue, but did not do so; (2) the defendant did not know the plaintiff would assert the right upon which the suit is based; and (3) extraordinary injury or prejudice would result from allowing the dispute to proceed.  *See Delgado v. Delgado*, 320 So. 3d 919, 925 (Fla. 3d DCA 2021) (citations omitted).   As with Defendant's failed statute of limitations defense, to warrant dismissal, the laches defense must be apparent on the face of the complaint.  *See LB Restaurants Sys. LLC v. Latin House Grill, LLC*, No. 1:13-CV-20910, 2013 WL 12094885, at * 2 (S.D. Fla. Nov. 14, 2013) (citations omitted).

---

[4] The automatic-renewal provision in the agreement also indicates renewal forms *one* contract with a single continuous term.  (*See* Compl. 94 ("The initial term, together with the renewal period (if any) is referred to as the 'Term.'")).  Whether the automatic-renewal provision was operative for more than one renewal is unclear: the language of the provision appears to govern for only one renewal term, which would have expired on August 1, 2019.  (*See* Compl. 94 (providing that after the two-year initial term, the agreement "will automatically renew for *an* additional one (1) year period unless a [p]arty gives notice of its intent not to renew at least 30 days before the expiration of the *initial* term" (alteration and emphases added)).

Defendant does not come close to showing that laches applies. (*See generally* Mot.; Reply). It merely asserts that Plaintiff's eight-year delay in pursuing its claims caused prejudice because Defendant lacked knowledge of the alleged breaches and thus "had no opportunity to cure them while [P]laintiff simultaneously made no effort to mitigate them, allowing the alleged damages to mount." (Mot. 5 (alteration added)). Defendant cites no authority in support of this theory, which overlooks Plaintiff's allegation of continuing breaches (*see* Compl. ¶ 20) and conflates laches with failure to mitigate — a distinct defense, *cf. Remp v. State*, 248 So. 2d 677, 679 (Fla. 1st DCA 1970) (explaining that prejudice for laches relates to "the dispersal and inaccessibility of witnesses, the dimming recollections and other disadvantages incident to the lapse of time"). More fundamentally, Defendant does not explain why it would not know of its own near-complete failure to perform under the parties' agreement. (*See generally* Mot.; Compl.).

Nor is equitable estoppel applicable. Estoppel requires "(1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance[.]" *United Auto. Ins. Co. v. Chiropractic Clinics of S. Fla., PL*, 322 So. 3d 740, 743 (Fla. 3d DCA 2021) (alteration added; quotation marks and citation omitted). Defendant's estoppel argument falters on the first element. The only representation Defendant identifies — and one which is not even alleged in the Complaint — is Plaintiff's failure "to notify [it] of the alleged breaches" — an omission on which Defendant ostensibly relied when it kept performing under the agreement. (Mot. 5 (alteration added)). Defendant cites no authority suggesting that silence regarding an alleged contractual breach qualifies as a representation for estoppel, nor does it explain how continuing to perform under the agreement constitutes a change in position or a detriment. (*See generally id.*; Reply).

Because no time bar applies, the Court turns to Defendant's argument that Plaintiff's allegations are insufficient to sustain its claims.

### B. <u>Failure to State Claims</u>

***Breach of Contract (Count I).***  To state a claim of breach of contract, a plaintiff must plead: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).

Defendant contends Plaintiff fails to state a breach-of-contract claim because the Complaint "merely list[s] contractual provisions" without explaining in "detail how [Plaintiff] believes that those provisions were allegedly breached."  (Mot. 8–9 (alterations added; emphasis omitted)).  This argument overstates the plausibility standard Plaintiff must meet, *see Iqbal*, 556 U.S. at 679 (citation omitted) — and misreads the Complaint.  (*See generally* Mot.; Compl.). Plaintiff identifies a number of specific ways Defendant allegedly breached the agreement. (*See* Compl. ¶¶ 20–24, 40).  As just one example, Plaintiff asserts Defendant breached section 4.1(e) of the agreement by "refus[ing] to provide [virtual private network] access to its networks" and "fail[ing] to provide [application programming interface] access for service integration."  (*Id*. ¶ 23 (alterations added); *see also id.* 83).[5]

***Implied Covenant of Good Faith and Fair Dealing (Count II).***  Defendant next argues Plaintiff's implied-covenant claim must be dismissed because it violates the independent tort

---

[5] Defendant continues by arguing that the Complaint "simply doesn't say" how "doing business other than through [Plaintiff] might possibly breach a non-exclusive contract like the [a]greement."  (Mot. 9 (alterations added)).  Regardless of whether Defendant is correct on this point, the other breaches Plaintiff identifies — which are linked to specific contractual provisions — are sufficient and prevent dismissal of Count I.

doctrine and duplicates Plaintiff's breach-of-contract claim. (*See* Mot. 6–8, 9–10). Plaintiff insists the claim is based on independent, tortious conduct. (*See* Resp. 13–14).

Defendant's first argument is misplaced. The independent tort doctrine provides that "a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *La Dolfina S.A., LLC v. Meeker*, No. 20-82231-Civ, 2022 WL 6507718, at *9 (S.D. Fla. Aug. 19, 2022) (citation and quotation marks omitted). But Defendant does not point to any authority indicating a breach of the implied covenant of good faith and fair dealing is a *tort* subject to the doctrine. (*See generally* Mot.; Reply).[6]

Nevertheless, Count II *is* duplicative of the breach-of-contract claim. While a plaintiff must allege a contractual violation to sustain a breach-of-implied-covenant claim, *see Hamilton v. SunTrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1310 (S.D. Fla. 2014) (citations omitted), the claim may proceed only if it rests on "allegations different than those underlying the accompanying breach of contract claim[,]" *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) (alteration added). Count II relies entirely on the same conduct identified in the breach-of-contract claim. (*See* Compl. ¶¶ 44–50; *see also id.* ¶¶ 20–31). Plaintiff argues the claim covers more than "mere non-performance[,]" citing allegations that Defendant secretly developed competing services and acted to "undermine [Plaintiff's] business success[.]" (Resp. 14 (alterations added; quotation marks omitted; quoting Compl. ¶ 47)). But because these assertions are unsupported by *any* concrete facts — no information about the competing services or how Defendant undermined Plaintiff —

---

[6] Nor does Defendant explain how Plaintiff's breach-of-implied-covenant claim — which must be rooted in "the reasonable expectations of the contracting parties in light of their express agreement[,]" *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012) (alteration added; quotation marks and citation omitted) — could be based on a "a recognized duty existing outside of the parties' contractual relationship[,]" *Capten Trading Ltd. v. Banco Santander Int'l*, No. 17-20264-Civ, 2018 WL 1558272, at *5 (S.D. Fla. Mar. 29, 2018) (alteration added), as required for the independent tort doctrine.

they fall short of plausibility, *see Twombly*, 550 U.S. at 555 (citation omitted), and do not support an inference that the alleged conduct was not contractually prohibited.

Several other allegations related to competition — like the assertions that Defendant "used confidential information, proprietary algorithms, market intelligence, and business strategies disclosed by [Plaintiff]" to "deploy[] competing mobile applications in multiple Latin American markets" (Compl. ¶¶ 26–27 (alterations added)) — are made upon information and belief, and thus would be insufficient even if they were not conclusory. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (explaining that a court need not "take as true . . . allegations [made] "upon information and belief" (alterations added; citation omitted)).

Simply put, Plaintiff provides no details to "'nudge the [allegations of competition or bad-faith conduct] across the line from conceivable to plausible." *Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1301 (S.D. Fla. 2020) (alteration added; quotation marks and citation omitted). Count II is dismissed.

***FDUTPA (Count III)*.**   The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Fla. Stat. § 501.204(1) (alterations added).  To plead a FDUTPA claim, a plaintiff must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Bechor v. Simcenter, Inc.*, 394 So. 3d 666, 669 (Fla. 3d DCA 2024) (citation omitted).  "Mere allegations of intentional breach of contract are insufficient to state a claim under the statute." *Hache v. Damon Corp.*, No. 07-cv-1248, 2008 WL 912434, at *2 (M.D. Fla. Apr. 1, 2008) (citation omitted).  And when a FDUTPA claim sounds in fraud, the heightened pleading standard of Rule 9(b) applies.  *See Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1292–1293 (11th Cir. 2025)

(concluding that a FDUTPA claim based on alleged misrepresentations sounded in fraud (citations omitted)).

Plaintiff's FDUTPA claim sounds in fraud, implicating Rule 9(b).  (*See* Compl. ¶¶ 51–58). Although Plaintiff includes some allegations that Defendant unfairly competed with Plaintiff (*see id.* ¶¶ 53, 55), the claim centers on allegations of deception — specifically, that Defendant made "material misrepresentations during contract negotiations and performance about its commitment to the partnership"  (*id.* ¶ 54; *see also id.* ¶ 53).  Count III does not come close to satisfying Rule 9(b).  Plaintiff does not specify who made the alleged misrepresentations, what was said or concealed and when, or what Defendant obtained as a result.  *See FindWhat Inv. Grp.*, 658 F.3d at 1296 (citations omitted).

Even if the heightened pleading standard did not apply, the claim would not survive.  As with several other claims, Plaintiff relies on conclusory allegations and legal conclusions, leaving the Court with the "mere possibility" that Defendant engaged in misconduct that supports the claim.  *Sinaltrainal*, 578 F.3d at 1261 (citation omitted).  For instance, Plaintiff asserts that Defendant's "unfair practices included using its superior market position and access to confidential information to gain competitive advantages that would not have been available through legitimate business competition" (Compl. ¶ 55) — but fails to include any details about what competitive advantages Plaintiff gained, how it used its market position to gain them, or why that conduct was unfair or deceptive under the FDUTPA (*see generally id.*).  Because Plaintiff's allegations do not support a reasonable inference of deceptive or unfair conduct — much less satisfy Rule 9(b) — Count III is dismissed.

***Tort Claims (Counts IV–VI).***  Moving on, Defendant asserts that Plaintiff's tort claims — for unfair competition, intentional interference with business relationships, and misappropriation

of trade secrets — violate the independent tort doctrine because they "recast causes of action that are otherwise breach-of-contract claims as tort claims." (Mot. 6 (quotation marks omitted; quoting *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1353 (S.D. Fla. 2021)); *see* Compl. ¶¶ 59–86). Defendant also contends the factual allegations are insufficient to sustain these claims. (*See* Mot. 13–16). Plaintiff insists the claims rest on duties not derived from the agreement and are sufficiently pleaded. (*See* Resp. 12–21). Defendant has the better argument here: Plaintiff's tort claims rest on conclusory, vague allegations and, as pleaded, duplicate the breach-of-contract claim.

First, the sparse allegations underlying each claim do not satisfy Rule 8. For example, Plaintiff's unfair-competition claim relies on a vague allegation that Defendant used confidential information to "develop competing services[.]" (Compl. ¶ 60 (alteration added); *see also id.* ¶¶ 59, 61–64). Plaintiff offers no information about the alleged competing services, leaving the Court unable to reasonably infer "deceptive or fraudulent conduct" or a resulting "likelihood of consumer confusion[,]" as required for an unfair-competition claim in Florida. *Webster v. Dean Guitars*, 955 F.3d 1270, 1277 (11th Cir. 2020) (alteration added; quotation marks and citation omitted).

The intentional-interference claim is likewise deficient. Plaintiff merely alleges "lost business relationships" with "current and potential customers" — without identifying any particular lost relationship or customer. (Compl. ¶¶ 66, 71; *see also id.* ¶¶ 65, 67–70); *see Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994) (explaining that to sustain an intentional-interference claim, a plaintiff must identify a "business relationship evidenced by an actual and identifiable understanding or agreement" that would likely have been completed absent interference).

Plaintiff's FUTSA claim fares no better. (*See* Compl. ¶¶ 72–80). To state a claim of

misappropriation of trade secrets, a plaintiff must allege it (1) possessed secret information and took reasonable steps to protect its secrecy, and (2) the secret it possessed was misappropriated by acquisition, disclosure, or use. *See Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1322 (S.D. Fla. 2013) (citation omitted); *Gordon Food Serv., Inc. v. Price*, No. 20-cv-2273, 2022 WL 2774209, at *7 (M.D. Fla. May 23, 2022) (citation omitted).  Regarding the first element, a plaintiff must "identify with reasonable particularity the trade secrets at issue before proceeding with discovery" — which requires more than simply "identify[ing] broad categories of information, such as financial and technical data[.]" *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848–49 (11th Cir. 2016) (alterations added; quotation marks and citations omitted).

Broad categories are all Plaintiff alleges.  (*See* Compl. ¶ 73 (listing categories such as "proprietary software algorithms and technical specifications for mobile application development[,] . . . customer behavioral analysis methodologies and market intelligence techniques[,] . . . [and] marketing strategies and customer acquisition methods") (alterations added)).  Consequently, Plaintiff's FUTSA claim does not meet the reasonable-particularity requirement.

Even if it did, the FUTSA claim would fail.  Rather than provide any facts about disclosure or use, Plaintiff simply states Defendant misappropriated "trade secrets" by "disclosing *or* using" confidential information in violation of the agreement and repeats the same generalized references to competing services.  (Compl. ¶ 76 (emphasis added)).  These vague allegations do not satisfy Rule 8's plausibility standard.  *See Iqbal*, 556 U.S. at 679 (citation omitted); *see also, e.g.*, *Am. Registry, LLC v. Hanaw*, No. 13-cv-352, 2013 WL 6332971, at *4 (M.D. Fla. Dec. 5, 2013) (dismissing a trade-secrets claim when the plaintiff provided no details about how trade secrets

had been misappropriated (citations omitted)); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1377 (M.D. Fla. 2008) (same).

Beyond these plausibility problems, Plaintiff's tort claims violate the independent tort doctrine. (*See* Compl. ¶¶ 59–86). As explained, under the doctrine, a tort claim may proceed alongside a contract claim only if based on "a tortious action committed separate and apart from the breach of contract." *Perez v. Scottsdale Ins. Co.*, No. 19-cv-22346, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020) (citation omitted); *see also Azure, LLC v. Figueras Seating U.S.A., Inc.*, No. 12-cv-23670, 2013 WL 12093811, at *6 (S.D. Fla. July 18, 2013) (noting a tort claim must rely on "additional conduct that is not alleged with respect to the breach of contract claim" (citation omitted)).[7]

Each of the tort claims duplicates the breach-of-contract allegations. (*See* Compl. ¶¶ 37–43, 59–86). For instance, the unfair-competition and FUTSA claims rest on allegations that Defendant "misappropriate[ed] confidential business information obtained through the contractual relationship" and used it for "purposes beyond the scope of the [a]greement" (*id.* ¶¶ 60, 76 (alterations added)) — rehashing the allegation in Plaintiff's breach-of-contract claim that Defendant "used confidential information" in violation of the agreement (*id.* ¶ 26; *see also id.* ¶¶ 28, 40). The intentional-interference claim also repackages breach-of-contract allegations: Plaintiff asserts that Defendant intentionally interfered with business relationships by "withholding promised marketing support" — conduct that was "improper because it involved breaching contractual duties[.]" (*Id.* ¶¶ 68, 70 (alteration added)).

---

[7] A plaintiff may plead a tort claim in the alternative to a breach-of-contract claim without implicating the independent tort doctrine. *See Floral Logistics of Miami, Inc. v. New York Garden Flower Wholesale, Inc.*, No. 23-20073-Civ, 2023 WL 4295320, at *5 (S.D. Fla. June 30, 2023) (citations omitted). Plaintiff does not plead its tort claims in the alternative. (*See* Compl. ¶¶ 59–86).

While this duplication would not bar the claims if Plaintiff alleged additional, independent tortious conduct, Plaintiff does not do so.  (*See* Compl. ¶¶ 59–86).  Given the vague and conclusory allegations in Counts IV–VI, the Court discerns no independent torts.

**Unjust Enrichment (Count VII).**   Finally, Defendant advances another duplication argument — that Plaintiff's unjust-enrichment claim fails because it is based on the same subject matter as the breach-of-contract claim.[8]  (*See* Mot. 16); *see also Persaud v. Bank of Am., N.A.*, No. 14-21819-Civ, 2014 WL 4260853, at *13 (S.D. Fla. Aug. 28, 2014) (explaining that a plaintiff cannot pursue a claim for unjust enrichment when an express contract governs the same subject matter (citation omitted)).   According to Plaintiff, the claim is "[p]roperly ple[aded] in the alternative" under Federal Rule of Civil Procedure 8(d)(3), as it addresses "[Defendant's] retention of benefits 'while simultaneously failing to provide the contracted consideration and support[.]'" (Resp. 17 (alterations added; quoting Compl. ¶ 83)).

To be sure, unjust enrichment may be pleaded in the alternative to a breach of contract when a plaintiff does not seek duplicative damages, *see Reinsurance Partners, Invs. v. Maite LLC*, No. 24-22563-Civ, 2025 WL 1517448, at *4 (S.D. Fla. May 5, 2025) (citations omitted); or when "one or more parties contest the existence of an express contract governing the subject of the dispute[,]" *Harris v. Nordyne, LLC*, No. 14-Civ-21884, 2014 WL 12516076, at *8 (S.D. Fla. Nov. 14, 2014) (alteration added; citation omitted).   But Plaintiff does not plead in the alternative.  (*See* Compl. ¶¶ 81–86).

---

[8] Defendant also contends the claim fails under the independent tort doctrine.  (*See* Mot. 7).  But as with its challenge to the claim of breach of the covenant of good faith and fair dealing, Defendant provides no authority suggesting that unjust enrichment is a tort subject to the doctrine.  (*See generally* Mot.; Reply); *see also Schwab v. Hites*, 896 F. Supp. 2d 1124, 1137 (M.D. Fla. 2012) (observing that unjust enrichment is "not considered a tortious act under Florida law" (quotation marks and citations omitted)).

To the contrary, Plaintiff grounds its unjust-enrichment claim on the same alleged breaches of contract it asserts in Count I. (*See* Compl. ¶¶ 81–86; Resp. 17). And Plaintiff does not allege that Defendant contests the existence of an express contract governing the dispute. (*See* Mot. 2–3; *see also generally id.*). Plaintiff thus fails to state a claim of unjust enrichment. *See Clifford Paper Inc. v. Colonial Press Int'l Inc.*, No. 17-22396-Civ, 2017 WL 8780146, at *7 (S.D. Fla. Aug. 1, 2017) ("As the parties have an express contract concerning the same subject matter, [plaintiff] fails to state a claim of unjust enrichment." (alteration added)).

**C.  Deficiencies in Plaintiff's Filings**

One matter remains. In the Reply, Defendant identifies a pattern of serious deficiencies in Plaintiff's Response — including fabricated quotations; reliance on authorities that do not support — or even discuss — the stated propositions; and, in two instances, citations to non-existent cases that appear to have been generated by an artificial intelligence ("AI") tool. (Reply 1; *see also generally id.*, Ex. A, Case Law Flaws [ECF No. 19-1]). Based on a review of Defendant's briefing, Plaintiff's Response, and Plaintiff's Proposed Sur-Reply — which addresses Defendant's accusations (*see generally* Proposed Sur-Reply) — the Court finds Plaintiff's counsel likely used AI to generate the Response and failed to ensure the accuracy of citations and legal arguments before signing and filing it.

Among other errors, Plaintiff cites two "cases" that appear not to exist. (*See* Case Law Flaws 2; Resp. 13–14 (citing "*Metropolitan Dade County v. Dyer*, 315 So. 2d 442, 444 (Fla. 3d DCA 1975)" and "*QBE Ins. Corp. v. Dome Constr. Corp.*, 10 So. 3d 676, 678 (Fla. 4th DCA 2009)"). Plaintiff also includes "quotes" that do not appear in the corresponding cited cases (*see* Case Law Flaws 2–3; Resp. 8, 13, 22); and references several cases that do not even discuss the *subject* for which Plaintiff cites them (*see* Case Law Flaws 3–6; *see also, e.g.*, Resp. 8 (citing

*Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 144 (4th Cir. 1979)), 16 (citing *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998)), 19 (citing *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1133 (M.D. Fla. 2007), and *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 575 (1977))).[9]

In the Proposed Sur-Reply, Plaintiff's attorneys[10] concede "there are various citation errors" in the Response, yet insist — without explanation — that "the propositions they stand for are grounded in supporting law." (Proposed Sur-Reply 1). Plaintiff's attorneys do not explicitly acknowledge their citations to nonexistent cases and quotes. (*See generally id.*). Nor do they explain how nonexistent cases can "stand for" any proposition. (*Id.* 1). Instead, they allude to "a cumulative effort amongst Plaintiff's attorneys that ultimately resulted in miscommunication and misapplication of counsels' research notes" (*id.*), and proceed to address substantive arguments Defendant makes in the Reply (*see generally id.*).

Remarkably, in doing so, Plaintiff's attorneys *again* misquote cases. In at least one instance, the Proposed Sur-Reply states that quoted language appears in a case — *Cohen v. Cooper*, 20 So. 3d 453 (Fla. 4th DCA 2009) — that does not contain the language. (*See* Proposed Sur-Reply 4; *see generally Cohen*, 20 So. 3d 453). In other areas of the Proposed Sur-Reply, Plaintiff's attorneys present quotes from Westlaw Keynotes as quotes from the text of cases. (*See* Proposed

---

[9] To be clear, the Court does not enumerate every dubious citation, nor does it endorse every characterization in Defendant's Case Law Flaws chart. (*See generally id.*). In at least one instance, Defendant appears to be incorrect about an alleged error: it asserts that Plaintiff cites *Salit v. Ruden, et al.*, 742 So. 2d 381, 385 (Fla. 4th DCA 1999), for a subject the case does not discuss (*see* Case Law Flaws 4); but Plaintiff merely cites the case as an example of a court "recognizing interference claims based on harm to third-party relationships" (Resp. 17) — which the case arguably does, *see Salit*, 742 So. 2d at 385–86.

[10] While the Response is signed by David Alvarez, an attorney at White & Twombly, P.A. (*see* Resp. 24), the Proposed Sur-Reply — signed by Alvarez and Robert Twombly, another attorney at the same firm — clarifies that the Response "was a cumulative effort amongst Plaintiff's attorneys" (Proposed Sur-Reply 1).

Sur-Reply 7 (misquoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006), and *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207 (Fla. 4th DCA 2019)), 9 (misquoting *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714 (7th Cir. 2003))).[11]

Considering this troubling pattern of errors, the Court is concerned that Plaintiff's attorneys may be in violation of their ethical duties toward the Court and their clients.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendant, Millicom International Cellular S.A.'s Motion to Dismiss **[ECF No. 17]** is **GRANTED in part and DENIED in part**.  Counts II–VII of the Complaint **[ECF No. 7-2]** are **dismissed**.  Plaintiff, Multiphone Latin America Inc. has until **September 10, 2025** to file an amended complaint.

2.   Under Rule 6(c) of the Southern District of Florida's Local Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys, Plaintiff's attorneys, David Allen Alvarez and Robert Twombly are **REFERRED** to the District's Ad Hoc Committee on Attorney Admissions, Peer Review, and Attorney Grievance for investigation of their conduct in representing Plaintiff in the above-captioned case, and for any other action deemed appropriate. Alvarez and Twombly are also **REFERRED** to the Florida Bar for similar investigation.

3.   Plaintiff's Motion for Leave to File [a] Sur-Reply **[ECF No. 22]** is **DENIED as moot**.

---

[11] Continuing the pattern, the Motion for Leave to File [a] Sur-Reply also misquotes a case.  (*See id.* 2 (omitting a word in a quote from *Hill v. England*, No. cv-05869, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005))).

CASE NO. 25-23249-CIV-ALTONAGA/Reid

**DONE AND ORDERED** in Miami, Florida, this 28th day of August, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

21